Exhibit C

## LOIS Federal District Court Opinions

EVERHART> v. <NATIONAL> RAILROAD PASSENGER CORP., (S.D.Ind. <2003>)

SONYA S. <EVERHART> Plaintiff, v. <NATIONAL> PASSENGER RAILROAD CORPORATION,

d/b/a AMTRAK, Defendant.

Cause No. IP01-1221-C-H/K

United States District Court, S.D. Indiana, Indianapolis Division

January 9, <2003>

[EDITORS' NOTE: THIS OPINION HAS BEEN DESIGNATED "NOT FOR PUBLICATION".]

Gary W Bippus, Ricos Bippus & Ralph, Indianapolis, IN.

Robert E Harrington, Harrington Thompson Acker and Harrington, Chicago, IL.

Bruce A Hugon, Stuart & Branigin, Indianapolis, IN.

ENTRY ON DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO EXECUTE
MEDICAL AUTHORIZATION

TIM A. BAKER, United States Magistrate Judge

On or about September 2, 1999, Plaintiff Sonya C. <Everhart> sustained a work-related injury during her employment with Defendant <National> Passenger Railroad Corporation (d/b/a Amtrak). As a result, <Everhart> filed suit under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et. seq., claiming that Defendant's negligence caused her injuries. [Compl. ¶¶ 3-4, 7]. In the discovery process, Defendant provided Everhart with a medical authorization which stated in pertinent part:

> I [Sonya C. Everhart] authorize my health care
> providers to provide to [Defendant], a copy of all
> records pertaining to the shoulder and neck injuries I
> sustained on or about September 2, 1999. These records
> include, but are not limited to, reports,
> consultations, x-rays, charts and office notes. I also
> authorize my health care providers to discuss my
> injuries with the individuals who are receiving these
> records. My authorization extends to my medical
> condition causally or historically related to my
> injuries.

[Def.'s Ex. 1] (emphasis in original). Essentially, Defendant wants to discover Everhart's medical records and conduct informal, private interviews with Everhart's physicians.

Everhart has refused to sign this release, claiming that Defendant does not have a right to conduct ex parte conferences with her health care providers.[fn1] As a result, Defendant has filed a motion to compel Everhart to execute its medical authorization.

Magistrate Judge Hussmann addressed the issue here in Shots v. CSX Transp., Inc., 887 F. Supp. 206 (S.D.Ind. 1995). In Shots, the defendant wanted plaintiff to sign medical authorizations so that it could "conduct discovery by way of an ex parte communication with the plaintiff's treating physician. Id. at 207. Judge Hussmann granted defendant's motion to compel plaintiff to execute medical authorizations, and the Court finds instructive the following passage from that case:

> In this particular case, the plaintiff has clearly put his medical condition at issue in the lawsuit. He has not indicated in his brief that he has any medical condition which is not related to his accident, or any condition that is "potentially embarrassing or ruinous" which would counsel for more rigorous protection of the privilege. We believe that the Federal Rules of Civil Procedure leave to the district court the discretion whether to allow ex parte conferences. Where the plaintiff does not suggest that any other medical condition exists which merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process. We encourage counsel for the parties to arrange informal conferences with the physicians in lieu of depositions when possible to reduce expenses in this case, and we likewise encourage counsel to offer to opposing counsel the opportunity to be present when informal communications take place. But we stop short of mandating that plaintiff's counsel be present on each occasion in this case. This opinion does not foreclose the possibility that an order prohibiting ex parte conversations could be issued in other cases in which a plaintiff objects to release of medical information because there is medical information in the possession of a particular physician which is both causally and historically unrelated to the condition at issue in the lawsuit and is potentially embarrassing or ruinous.

Id. at 207-08. Similarly, in this case, Everhart has placed her medical condition at issue by seeking damages for "disability" and "pain and suffering." [Compl. ¶ 8].

Everhart's physicians may have information about her medical condition that is sensitive, irrelevant, and even embarrassing. However, the Court must balance the risks of disclosure of this information with that of the Defendant's right to mount its defenses for trial and to have equal access to pertinent witnesses. In attempting to strike this balance, the Court notes that Everhart failed to file an opposition brief. As a result, any claims of privacy or other sound arguments Plaintiff might have made against disclosure are waived. This necessarily tips the balance in Defendant's favor. Therefore, Defendant is permitted to conduct ex parte interviews with Everhart's physicians as if they are any other fact witness.

Accordingly, Defendant's motion to compel Plaintiff to execute medical authorization is GRANTED. Within 15 days of this entry, Everhart is ORDERED to provide Defendant with the signed authorization proffered as

Case 3:00-cv-01608-WWE   Document 84-2   Filed 10/29/2009   Page 4 of 24

Defendant's Exhibit 1.

So ordered.

[fn1] Everhart failed to file an opposition to Defendant's motion to compel. Therefore, the Court accepts as true Defendant's representations as to the nature of Everhart's objections to the authorizations. [See Defendant's Rule 37.1 statement, Docket # 29].

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved

DAVIS> v. <BERGE, (W.D.Wis. 2002)

ALLEN TONY DAVIS, Plaintiff, v. GERALD BERGE, JAMES PARISIS, BOUGHTON,

LINDA HODDY-TRIPP, RANDY HEPP, VICKIE SHARPE, TIM HAINES and LOFTHOUSE,

Defendants.

01-C-265-C

United States District Court, W.D. Wisconsin

July 15, 2002

OPINION AND ORDER

BARBARA B. CRABB, United States District Judge

In this civil action for monetary relief brought pursuant to 42 U.S.C.
§ 1983, plaintiff Allen Tony Davis contends that defendants violated
several of his constitutional rights relating to his incarceration at
Supermax Correctional Institution. Specifically, he alleges that defendants
Gerald Berge and James Parisi (his correct name) violated his rights under
the First Amendment by instituting and implementing a policy under which
officers checked legal mail for contraband and non-legal content before
inmates were allowed to seal the envelopes. Plaintiff alleges that
defendant Lofthouse was deliberately indifferent to his serious dental
needs by forcing plaintiff to wait several months to have teeth extracted.
Finally, plaintiff contends that defendants violated his Eighth Amendment
right to be free from cruel and unusual punishment by subjecting him to
certain conditions of confinement, by subjecting him to unreasonable
searches and by providing him with inadequate dental health care when they
provided him with a spiked toothbrush contraption.

This case is now before the court on several motions. Defendants Berge
and Parisi have filed a motion for summary judgment and plaintiff has
filed a cross-motion for summary judgment relating to plaintiff's First
Amendment claim. Because I find that defendants' policy did not authorize
correctional officers to read plaintiff's legal mail outside his
presence, I will grant defendants Berge's and Parisi's motion for summary
judgment on this claim and will deny plaintiff's motion for summary
judgment relating to this claim. Because this is the only claim against
defendant Parisi on which plaintiff was granted leave to proceed,
defendant Parisi will be dismissed from the suit.

Defendant Lofthouse has filed a motion for summary judgment relating to
plaintiff's claim that defendant Lofthouse was deliberately indifferent to
his serious dental needs by forcing plaintiff to wait several months to
have teeth extracted. Because there are material disputed facts and I am
unable to conclude that no reasonable jury could find that defendant
Lofthouse was deliberately indifferent to plaintiff's dental health care
needs, I will deny defendant Lofthouse's motion for summary judgment.

Plaintiff has filed three additional motions. First, plaintiff filed a
motion to strike those portions of defendant Lofthouse's affidavit

concerning plaintiffs dental records that pre-date his current claim. I
will deny the motion to strike. Although plaintiff's dental history
dating to 1983 is irrelevant to this case, the recent history establishes
that plaintiff was diagnosed with a serious dental condition. Second,
plaintiff filed a motion for an order requiring him to submit exhibit A to
his response to defendant Lofthouse's motion for summary judgment.
Plaintiff explains that prison officials are unwilling to extend him a
legal loan to allow him to photocopy this exhibit so that he can furnish
the court with a copy. Because defendant Lofthouse admits the facts
supported by plaintiff's exhibit A, I will deny as unnecessary
plaintiff's motion for an order requiring him to submit exhibit A. Third,
plaintiff has filed a motion objecting to a supplemental affidavit of
Douglas S. Knott filed in conjunction with defendant Lofthouse's reply to
plaintiff's response to his motion for summary judgment. Defendant
Lofthouse did not rely on the supplemental affidavit in responding to
plaintiff's proposed facts or in replying to plaintiff's response to his
proposed facts. Therefore, I did not consider any evidence contained in
the supplemental affidavit. Plaintiff's motion will be denied as
unnecessary.

   Also before the court is defendants' motion to dismiss all of plaintiffs
remaining claims under the Eighth and Fourth Amendments on the grounds that
plaintiff failed to exhaust his administrative remedies as to some claims
and that defendants enjoy qualified immunity as to the remaining claims.
This motion will be granted in part and denied in part. I conclude that
plaintiff has failed to exhaust his administrative remedies as to his Fourth
Amendment claim that he was subjected to unreasonable searches, his Eighth
Amendment claim that he was denied dental care because he had to use a
toothbrush contraption and all aspects of his claim that the conditions of
his confinement violate the Eighth Amendment other than his claims that he
is subjected to constant lighting, constant video monitoring and being
awakened for hourly bed checks. I conclude also that plaintiff's claim that
defendants are violating his Eighth Amendment rights by subjecting him to
constant video monitoring does not rise to the level of an Eighth Amendment
violation and I will dismiss this claim. I conclude further that defendants
do not enjoy qualified immunity as to plaintiff's claims that defendants
have violated his right to be free from cruel and unusual punishment by
subjecting him to (1) constant illumination that was so bright that it kept
him from sleeping, causing him physical harm, without any legitimate
penological interest and (2) being awakened on an hourly basis without any
legitimate penological justification.

   Finally, defendants have filed a motion to dismiss plaintiffs claims
relating to the conditions of confinement on the ground that plaintiff has
failed to provide them an authorization for the release of his medical
records for use in this case. I will stay a decision on this motion in
order to allow plaintiff time to submit the authorization to defendants'
counsel.

   From the proposed findings of facts submitted by the parties, I find the
following facts to be material and undisputed as they relate to the
parties' motions for summary judgment. In deciding defendants' motion to
dismiss for plaintiff's failure to exhaust his administrative remedies, I
have considered the exhibits submitted by the parties documenting the steps
that plaintiff took to exhaust his administrative remedies.

                         UNDISPUTED FACTS

                     A. First Amendment Claim

Plaintiff Allen Tony Davis has been an inmate at Supermax Correctional Institution in Boscobel, Wisconsin, since December 9, 1999. Defendant Gerald Berge is the warden of the institution. Defendant James Parisi was the security director of the institution at all times relevant to plaintiff's First Amendment claim.

On December 15, 1999, defendant Parisi issued a memorandum to all inmates describing a new mail policy. In relevant part, the policy states:

ALL outgoing U.S. Postal mail shall be left unsealed when staff pick it up. Legal mail must be shown to staff prior to the sealing of the envelope in the presence of the staff member to verify the legal nature of the contents.

On December 29, 1999, defendant Parisi issued another memorandum that provides:

There has been numerous inaccurate and unnecessary concerns expressed regarding the 12-15-99 memo on "Mail." Allow me to further clarify and put to rest some of these concerns.

. . .

4. Your "Legal Mail" . . . will not be hindered. You are allowed to seal your envelope yourself, AFTER you demonstrate to staff that correspondence is being sent, not any contraband injurious or offensive to another. Staff are not "reading" your legal correspondence in anyway. Staff will then accept the mail from you, assuring proper return address is noted and properly process it. This simple process does not delay delivery, read, censor or alter legal documents.

While these procedures may be different from your previous experiences, the Supermax Institution will assure the proper protection of DOC staff, inmates, Officials and the Public.

According to defendant Parisi, the policy was intended to prevent inmates from using the legal mail system improperly by transmitting mail and contraband that was not legal in nature. As an experienced corrections officer, defendant Parisi was aware of instances in which inmates had placed non-legal mail or contraband in envelopes protected as "legal mail" in an effort to circumvent security procedures. On February 17, 2000, the December 15, 1999 legal mail policy was discontinued.

While the December 15, 1999 policy was in effect, correctional staff inspected all outgoing legal mail from inmates to their lawyers and to courts. On at least 16 different occasions, plaintiff witnessed staff appear to be reading his outgoing mail to his lawyers. On at least one occasion, inmate Andre Turner witnessed staff appear to be reading plaintiff's outgoing legal mail.

B. Eighth Amendment inadequate Dental Health Care Claim

In 2000 and 2001, defendant Lofthouse, a licensed dentist, provided dental services at Supermax. During that time, Lofthouse was responsible for scheduling the dental appointments at Supermax. Under the dental

recordkeeping procedure then in place, the dentist would receive the requests, review them, rank them in order of priority and then add the requests to his schedule. Until approximately January 2001, the request forms were discarded after review. In January 2001, the dentist began stamping a portion of the request, indicating that it had been received, and returning that portion to the inmate.

On May 24, 1999, plaintiff was diagnosed with advanced periodontal disease by a dentist at another institution. At that time, the treating dentist recommended that plaintiff have any painful teeth extracted immediately. Plaintiff refused extraction at that time.

Defendant Lofthouse examined plaintiff for the first time on July 28, 2000, after plaintiff submitted a request for urgent dental care. (It is disputed whether plaintiff had made previous requests. Defendant Lofthouse avers that this was the first request for dental care that he had received from plaintiff. Plaintiff avers that after he was transferred to Supermax on December 9, 1999, he requested emergency dental care at least once a week for his teeth, which ached so badly that they caused migraine headaches.) Plaintiff complained of pain in the area of tooth #13. (It is disputed whether his complaint was limited to that tooth. Defendant alleges that plaintiff complained of pain in the area of tooth #13 only. Plaintiff alleges that he complained of pain in the area of teeth ##2 and 31 also.) Defendant Lofthouse noted the presence of a periodontal abscess in the area of tooth #13 and extracted the tooth at that appointment. (It is disputed whether defendant told plaintiff that he would have to wait to have teeth ## 2 and 31 pulled in order to allow recovery time and to lessen his discomfort.) At the appointment, plaintiff observed between 200 and 300 dental request slips on defendant Lofthouse's desk. Defendant worked part-time and did not have a dental assistant or a hygienist.

Defendant Lofthouse examined plaintiff again on October 31, 2000, after plaintiff submitted a request for emergency dental care. (Again, it is disputed whether this was the second request for emergency dental care that defendant received from plaintiff, as defendant avers. Plaintiff alleges that he submitted requests for emergency dental care at least once a week from the July 28, 2000 appointment until the October 31, 2000 appointment.) At that appointment, defendant Lofthouse recommended extraction of four affected teeth and immediately extracted teeth ##2 and 31. Lofthouse did not extract teeth ## 18 and 19 at that time in order to lessen plaintiffs discomfort on that date and to allow some recovery before proceeding. At the same appointment, Lofthouse made a follow-up appointment to extract the other two affected teeth on November 14, 2000.

At later appointments, plaintiff has not complained of pain in the area of teeth ## 18 and 19. After having calculus removed from tooth #5 and having his teeth cleaned by a dental hygienist, plaintiff has not had serious dental health problems and teeth ## 18 and 19 have not required extraction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

On December 29, 1999, plaintiff filed an inmate complaint (#SMCI-2000-75 8), complaining about the conditions of confinement at Supermax, including constant video monitoring, 24-hour lighting, ventilation that "blows cold air," cold food, 7-minute showers twice a week, mail policy that requires mail to be left open and the window in the cell door always closed. On April 17, 2000, the inmate complaint examiner rejected the complaint as frivolous because it did not allege sufficient facts upon which redress could be made. On May 2, 2000, reviewer John Ray rejected the appeal

because the complaint had been rejected as frivolous. On November 11, 2000, plaintiff appealed the rejection to defendant Berge. On November 20, 2000, defendant Berge rejected the appeal on the ground that the time limit for appeal had expired.

On January 3, 2000, plaintiff filed an inmate complaint (#SMCI-2000-738), complaining about the conditions of confinement at Supermax, including constant monitoring by a video camera, three hours of recreation in an ill-equipped exercise room and no access to the outdoors. On April 12, 2000, the inmate complaint examiner rejected the complaint as frivolous because it did not allege sufficient facts to be addressed. On April 13, 2000, reviewer John Ray rejected the appeal because the complaint had been rejected as frivolous. On October 31, 2000 and November 3, 2000, plaintiff appealed the rejection to defendant Berge. On November 20, 2000, defendant Berge rejected the appeal on the ground that the time limit for appeal had expired.

On October 2, 2000, plaintiff filed an inmate complaint (#SMCI-2000-28015), complaining about the conditions of confinement, including constant illumination, being awakened during the night, "ventilation [that] reflect[s] the temperature outside," video monitoring, cold cells with inadequate clothing, lack of recreation, using food as punishment, poor air quality, inadequate spiked toothbrush contraption and having to wait months to have painful teeth extracted. The complaint was rejected because it raised more than one issue. Plaintiff appealed and the secretary's office affirmed the rejection without addressing the merits of the complaint.

On October 23, 2000, plaintiff filed an inmate complaint (#SMCI-2000-30871), alleging that certain conditions at Supermax violated his right to be free from cruel and unusual punishment: inadequate funds to buy personal hygiene products, writing paper and stamps; visiting procedures; staff misuse of medical intercom, depriving inmates of sleep; improper cell searches; and other matters. The complaint was rejected because it raised more than one issue. Plaintiff appealed and the secretary's office affirmed the rejection without addressing the merits of the complaint.

On November 2, 2000, plaintiff filed an inmate complaint (#SMCI-2000-31868), alleging that although he had submitted numerous emergency dental request slips, he had had to wait seven months to have one tooth pulled and four additional months to have two more teeth pulled. He also complains about the finger toothbrush and not being given a soft-bristle toothbrush. The complaint was rejected because it raised more than one issue. Plaintiff appealed and the secretary's office affirmed the rejection without addressing the merits of the complaint.

On November 8, 2000, plaintiff filed an inmate complaint (#SMCI-2000-32309), complaining about the constant video monitoring that strips inmates of all privacy. The inmate complaint examiner recommended dismissing the complaint because monitoring is a security decision and not subject to review by the inmate complaint examiner. After the reviewer dismissed the complaint, the corrections complaint examiner dismissed plaintiff's appeal. That decision was accepted as the decision of the Secretary of the Department of Corrections on February 6, 2001.

On November 17, 2000, plaintiff filed an inmate complaint (#SMCI-2000-33128), complaining about the constant illumination. The inmate complaint examiner recommended dismissing the complaint because the constant lighting had a security purpose. After the reviewer

dismissed the complaint, the corrections complaint examiner dismissed plaintiff's appeal. That decision was accepted as the decision of the Secretary of the Department of Corrections on February 10, 2001.

On November 21, 2000, plaintiff filed an inmate complaint (#SMCI-2000-33506), complaining about the lack of sleep from the constant illumination, not being able to cover his head and being subjected to hourly bed checks. The inmate complaint examiner recommended dismissing the complaint because plaintiff was awakened for a security purpose. After the reviewer dismissed the complaint, the corrections complaint examiner dismissed plaintiff's appeal. That decision was accepted as the decision of the Secretary of the Department of Corrections on February 10, 2001.

On December 20, 2000, plaintiff filed an inmate complaint (#SMCI-2000-36914), alleging that the policy of forcing inmates to choose between the law library and recreation violates their rights. The inmate complaint examiner recommended dismissing the complaint on the merits. After the reviewer dismissed the complaint, the corrections complaint examiner dismissed plaintiff's appeal. That decision was accepted as the decision of the Secretary of the Department of Corrections on March 19, 2001.

OPINION

I. CROSS-MOTIONS FOR SUMMARY JUDGMENT RELATING TO
PLAINTIFF'S FIRST AMENDMENT CLAIM

Plaintiff alleges that for a period of two months, defendants Parisi and Berge required inmates, including plaintiff, to leave their "legal mail" addressed to their lawyers open to permit staff to read it in violation of their rights under the First Amendment. Prisoners have a limited liberty interest in their mail under the First Amendment. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Martin v. Brewer, 830 F.2d 76, 77 (7th Cir. 1987). As a general rule, inmate mail can be opened and read outside the inmate's presence, Martin, 830 F.2d at 77, but legal mail is subject to somewhat greater protection. Although prison officials may open a prisoner's legal mail in his presence, Wolff v. McDonnell, 418 U.S. 539, 577 (1974), repeated instances of opening a prisoner's legal mail outside his presence are actionable. Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was opened repeatedly and sometimes stolen stated claim); Castillo v. Cook County Mail Room Dept. 990 F.2d 304, 306-07 (7th Cir. 1993) (allegations that prisoner's legal mail was opened outside his presence stated a claim). The extra protections afforded legal mail are reserved generally for privileged correspondences between inmates and their attorneys, Wolff, 418 U.S. at 574; Antonelli, 81 F.3d at 1432,, like some of the mail at issue in this case.

The undisputed facts establish that the challenged policy did not violate plaintiff's constitutional rights. The policy required the inspection process to take place at cell front: the inmate was to leave his legal mail unsealed, the officer would inspect the letter to insure that it was legal in nature and the inmate would then seal the envelope. Under Wolff, 418 U.S. at 577, correctional officers may open an inmate's legal mail in his presence in order to inspect for contraband but not to read the mail. In Wolff, the court of appeals reasoned that such a procedure does not chill communication because the inmate's presence insures that officials will not read the mail. Although the mail at issue in Wolff involved incoming rather than outgoing legal mail, this reasoning applies with equal force. If the possibility that contraband could be enclosed in letters from lawyers was

sufficient to warrant the prison officials' opening of those letters in Wolff, it is certainly warranted for prison officials to check letters from inmates to lawyers for contraband, as long as the inspection is performed in the presence of the inmates.

The parties dispute whether the officers actually "read" plaintiff's legal mail. However, if any officer read plaintiff's mail beyond the inspection required under the policy, plaintiff should have sued the officers individually. The policy does not allow for reading beyond the scanning necessary to insure that the mail was in fact legal mail and not non legal mail or contraband. Such a policy is constitutional. Taking the facts in the light most favorable to plaintiff, no reasonable jury could conclude that defendants Berge and Parisi violated plaintiff's rights under the First Amendment by administering a policy under which prison officials required inmates to leave their legal mail unsealed until it had been inspected for contraband and non-legal nature. Defendants Berge's and Paris i's motion for summary judgment will be granted on this claim and plaintiff's motion for summary judgment will be denied.

## II. DEFENDANT LOFTHOUSE'S MOTION FOR SUMMARY JUDGMENT
## RELATING TO PLAINTIFF'S INADEQUATE DENTAL CARE CLAIM

The Eighth Amendment requires the government "`to provide medical care for those whom it is punishing by incarceration.'" Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). To state a claim of cruel and unusual punishment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. The Court of Appeals for the Seventh Circuit has defined "serious medical needs" as encompassing not only conditions that are life-threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering. Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1997).

According to the Court of Appeals for the Seventh Circuit, "dental care is one of the most important medical needs of inmates." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (inmate stated claim when deprived of dentures and, as a result, was unable to chew food and suffered bleeding, headaches, humiliation and disfigurement). Although the court of appeals has not addressed the question whether periodontal disease alone constitutes a serious medical need, the undisputed facts support a finding that plaintiff's condition was sufficiently serious to implicate the Eighth Amendment. Defendant Lofthouse asserts that plaintiff is not a medical expert and, therefore, is not qualified to ascertain the seriousness of his periodontitis. However, plaintiff is capable of describing his own pain and suffering that he may have experienced as a result of the disease, Gutierrez, 111 F.3d at 1371, and the undisputed facts show plaintiff was losing his teeth. Taking the facts in the light most favorable to plaintiff, I find that plaintiff has adduced facts sufficient to show that his periodontitis constitutes a serious medical need.

Turning to the second element, I find that defendant Lofthouse has not shown that he is entitled to judgment as a matter of law on plaintiff's claim that he was deliberately indifferent to plaintiff's dental needs by forcing plaintiff to wait several months before extracting painful teeth. The Supreme Court has held that deliberate indifference requires a showing that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." Farmer, 511 U.S. at 837. Inadvertent error, negligence, gross negligence or even ordinary malpractice are insufficient grounds for invoking the Eighth Amendment. See Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); see also Snipes, 95 F.3d at 590-91; Franzen, 780 F.2d at 652-53. Deliberate indifference in the denial or delay of medical care is evidenced by a defendant's actual intent or reckless disregard. Reckless disregard is characterized by highly unreasonable conduct or a gross departure from ordinary care in a situation in which a high degree of danger is readily apparent. See Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985).

The essential question in this case is whether "the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoners condition,'" Snipes, 95 F.3d at 592 (citations omitted), giving rise to a claim of deliberate indifference. See also Estelle, 429 U.S. at 104-05 (holding that deliberate indifference "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). Two material facts relating to defendant Lofthouse's alleged indifference to plaintiff's dental needs are in dispute. First, it is disputed whether plaintiff submitted at least one emergency dental request slip each week from his arrival at Supermax on December 9, 1999, until he was scheduled for his appointment on July 28, 2000, and, if so, whether defendant Lofthouse received the request slips. Second, it is disputed whether beginning promptly after July 28, 2000, plaintiff complained of pain in teeth ## 2 and 31, which were eventually extracted on October 31, 2000. Taking the facts in the light most favorable to plaintiff, plaintiff has adduced evidence that he was forced to wait over seven months to have one tooth extracted and either three or ten months to have another two teeth extracted. Questions of credibility about material facts require denial of summary judgment. Fed. R. Civ. P. 56(e); see also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Accordingly, I will deny defendant Lofthouse's motion for summary judgment.

Defendant Lofthouse raises another argument in support of his claim that he was not deliberately indifferent to plaintiff's serious dental needs: defendant alleges that plaintiff "refused" to go to his dental appointments on several occasions from 1983 to 1999. This allegation does not advance defendant's argument because the alleged refusals have no bearing on whether defendant Lofthouse was deliberately indifferent to plaintiff's serious dental needs from December 1999 to October 2000. It may be that defendant is suggesting that plaintiff caused his own periodontal disease by not attending to his dental hygiene. If this is the case, plaintiff's alleged refusals could be relevant to a determination of plaintiff's damages. However, the alleged refusals are not relevant to the finding of deliberate indifference.

In relation to this motion for summary judgment, plaintiff has filed a motion to strike those portions of defendant Lofthouse's affidavit that address plaintiff's dental care before his transfer to Supermax. Although plaintiff's dental history from 1983 through 1999 is irrelevant to the determination whether defendant Lofthouse was deliberately indifferent to plaintiff's serious dental needs in 2000, plaintiff's recent dental history establishes that plaintiff was diagnosed with a serious dental condition. Because the recent portion of plaintiff's dental history is relevant to his claim, I will deny plaintiff's motion to strike.

Plaintiff has also filed a motion for this court to order him to produce exhibit A to his affidavit in opposition to defendant Lofthouse's motion for summary judgment. Plaintiff explains that prison officials are unwilling to extend him a legal loan to allow him to photocopy this exhibit so that he can furnish the court with a copy. Rather than force officials at Supermax to extend plaintiffs legal loan, I note that defendant Lofthouse has admitted all of plaintiff's proposed findings of facts that cite to exhibit A. Therefore, I will deny plaintiff's motion for a court order as unnecessary.

Finally, plaintiff has filed a motion objecting to a supplemental affidavit of Douglas S. Knott filed in conjunction with defendant Lofthouse's reply to plaintiff's response to the motion for summary judgment. Plaintiff asserts that it is too late for defendant Lofthouse to submit supplemental evidence to which plaintiff has no opportunity to respond. However, when evidence contained in a reply addresses directly evidence contained in a response, such reply evidence is permissible despite the fact that the responding party does not have the opportunity to respond. In this case, defendant Lofthouse did not rely on the supplemental affidavit in responding to plaintiff's proposed facts or in replying to plaintiff's response to his proposed facts. Therefore, I did not consider any evidence contained in the supplemental affidavit. I will deny as unnecessary plaintiff's motion not to consider the supplemental affidavit of Douglas S. Knott.

### III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S REMAINING CLAIMS

#### A. Administrative Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The term "prison conditions" is defined in 18 U.S.C. § 3626(g)(2), which provides that "the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." The Court of Appeals for the Seventh Circuit has held that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999); see also Massey v. Helman, 196 F.3d 727 (7th Cir. 1999).

The Seventh Circuit has stated that "if a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." Massey, 196 F.3d at 733. Wis. Admin. Code § DOC 310.04 requires that "[b]efore an inmate may commence a civil action . . . the inmate shall file a complaint under §§ DOC 310.09 or 310.10, receive a decision on the complaint under § DOC 310.12, have an adverse decision reviewed under § DOC 310.13, and be advised of the secretary's decision under § DOC 310.14." An inmate shall include only one issue in each complaint. Wis. Admin. Code § DOC 310.09(1). The inmate complaint examiner may reject a complaint as frivolous if it

fails to allege sufficient facts upon which redress may be made. Wis.
Admin. Code § DOC 310.11(4)(c).

   In this case, plaintiff was granted leave to proceed against defendants
Berge, Boughton, Hoddy-Tripp, Hepp, Sharpe and Haines on his Eighth
Amendment conditions of confinement claim, including the following
conditions: 24-hour lighting; 24-hour camera monitoring; inadequate
ventilation; inadequate recreation; no outside view; inadequate clothing;
visitation through video monitors; no hygiene products in cell; and being
awakened during the night. Plaintiff was also granted leave to proceed
against these defendants on his Fourth Amendment unreasonable searches
claim and against defendants Berge, Hoddy-Tripp and Sharpe on his Eighth
Amendment inadequate dental care claim relating to the spiked toothbrush
contraption. Defendants argue that under Pozo v. McCaughtry, 286 F.3d 1022
(7th Cir. 2002), plaintiff failed to exhaust his administrative remedies as
to all of the individual conditions of confinement (other than 24-hour
illumination, 24-hour monitoring and being awakened during the night) as
well as his unreasonable searches claim and his inadequate dental care
claim relating to the toothbrush contraption and, therefore, his complaint
should be dismissed as to these claims. Defendants assert that plaintiff
failed to comply with state exhaustion procedures as to these claims when
the inmate complaints relating to those claims were either rejected as
frivolous and not appealed timely (##SMCI-2000-738 and 758) or dismissed as
including more than one issue (##SMCI-2000-28015, 30871 and 31868).

   In Pozo id at 1024, the plaintiff filed an untimely appeal within the
inmate complaint review system that was not considered on the merits and
was found not to have exhausted his administrative remedies. The Court of
Appeals for the Seventh Circuit held that "unless the prisoner completes the
administrative process by following the rules the state has established for
that process, exhaustion has not occurred." Id. at 1023. The court reasoned
that any other approach would defeat the statutory objective of allowing
the prison administration the opportunity to fix the problem id at 1024,
and would remove the incentive that § 1997e provides for inmates to
follow state procedure, id. at 1025.

   In this case, plaintiff also failed to follow state procedure, both by
filing untimely appeals and by including more than one issue in a
complaint. As to the first category of complaints (##SMCI-2000-738 and
758), plaintiff argues that he did not fail to follow state procedure.
After the complaints were rejected as frivolous, plaintiff appealed them
to the correct reviewing authority, warden defendant Bertrand. See Wis.
Admin. Code §§ DOC 310.08(5), 310.11(4), 310.13(4). However,
plaintiff filed the appeals over six months after the complaints were
rejected: the two complaints were rejected as frivolous on April 12 and
17, 2000, and plaintiff appealed one of the complaints on October 31,
2000 and November 3, 2000, and the other complaint on November 11, 2000.
In both cases, defendant Bertrand rejected plaintiff's appeals on the
ground that the time limit for appeal had expired. Plaintiff argues that
the Wisconsin Administrative Code does not set out a deadline for filing
complaints rejected as frivolous and, therefore, he cannot be deemed to
have missed the deadline for appealing these two complaints. Although
plaintiff is correct that there is no deadline spelled out in the code,
filing an appeal over six months after the rejection of the complaint is
beyond any reasonable time limit for appealing, especially in light of
the fact that an inmate has ten days in which to appeal typical
dismissals to the corrections complaint examiner. Wis. Admin. Code §
310.13(1). One of the purposes of the inmate complaint system is to
provide prison officials with the opportunity to correct problems in a
quick, informal manner before an inmate invokes the more formal and

costly route of filing a lawsuit. Pozo, 286 F.3d at 1024. Waiting over
six months to file an appeal from a complaint that is rejected as
frivolous amounts to an untimely appeal. Plaintiff failed to follow state
procedure as to complaints ##SMCI-2000-738 and 758. Therefore, under
Pozo, plaintiff has not exhausted his administrative remedies as to the
claims that appear only in these inmate complaints, including inadequate
ventilation, no view to the outdoors and lack of recreation. These claims
will be dismissed for failure to exhaust administrative remedies.

   As to this second category of complaints (##SMCI-2000-28015, 30871 and
31868), plaintiff has also failed to follow state procedure. The Wisconsin
Administrative Code establishes clearly that inmates may not include more
than one issue in each complaint, Wis. Admin. Code § DOC 310.09(1).
Plaintiff's inmate complaints ##SMCI-2000-28015, 30871 and 31868 were
dismissed because they raised more than one issue. Although these
complaints do not involve a question of timeliness as in Pozo, the court's
reasoning in that case applies with equal force here. Plaintiff failed to
follow state procedure and, therefore, has not exhausted his administrative
remedies as to any claims that are raised uniquely in these complaints,
including inadequate clothing, visitation through video monitors, no
hygiene products in cell, improper cell searches and the inadequate spiked
toothbrush contraption. These claims will be dismissed because plaintiff
has failed to exhaust his administrative remedies as to them.

   Defendants assert that plaintiff did not file any complaint relating to
inadequate ventilation. I find that his inmate complaint about ventilation
"blowing cold air" in the winter, #SMCI-2000-758, relates to inadequate
ventilation, but that he has failed to exhaust as to this condition of
confinement because he complained about this condition only in a complaint
that was rejected as frivolous and not appealed timely.

                        B. Qualified Immunity

   After dismissing the claims on which plaintiff failed to exhaust his
administrative remedies, only the following claims remain: constant
illumination, constant video monitoring and being awakened during the
night. For their first line of defense, defendants argue that plaintiff
failed to state a claim because he failed to allege that the policies about
which he complains "were adopted because of, rather than in spite of, the
embarrassment or inconvenience and/or discomfort it causes some prisoners."
Dfts.' Br. in Support of Mo. to Dismiss, dkt. #111, at 11. However, under
the liberal pleading requirements of Fed. R. Civ. P. 8, plaintiffs do not
need to plead specific facts in order to state a claim upon which relief
can be granted. Instead, plaintiffs need only specify the "bare minimum
facts necessary to put the defendant on notice of the claim so that he can
file an answer." Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002). Under
Higgs, I find that plaintiff need not allege a punitive purpose behind the
challenged policies but, instead, need only place defendants on notice of
his claim. Because plaintiff has met his burden, his complaint as to these
three conditions of confinement will not be dismissed on this ground.

   For a second line of defense, defendants contend that they are entitled
to qualified immunity from these claims because their conduct did not
violate any of plaintiff's clearly established constitutional rights. The
doctrine of qualified immunity involves a two-step inquiry. The "first
inquiry must be whether a constitutional right would have been violated on
the facts alleged; second, assuming the violation is established, the
question [is] whether the right was clearly established." Saucier v. Katz,
533 U.S. 194, 200 (2001). Thus, even if a plaintiffs allegations would
establish a constitutional or statutory violation, if true, public

officials may be shielded from liability for civil damages for their impermissible conduct if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier, 533 U.S. at 206. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The rights alleged to have been violated must be sufficiently particularized to put potential defendants on notice that their conduct is unlawful. Anderson v. Creighton, 483 U.S. 635, 640 (1987). "For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. . . .] but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, No. 01-309, 2002 WL 1378412, at *5 (U.S. June 27, 2002) (citations omitted). The relevant question is whether the state of the law at the time of the challenged acts gave the defendants fair warning that the plaintiff's alleged treatment was unconstitutional. See id. at *6. Although qualified immunity is an affirmative defense, the plaintiff bears the burden of establishing the existence of a clearly established right at the time of the alleged violations. Mitchell v. Forsyth, 412 U.S. 511, 526 (1985); Abel v. Miller, 824 F.2d 1522 (7th Cir. 1987).

Construing plaintiff's complaint liberally, I find that defendants are not entitled to qualified immunity as to plaintiff's allegations that defendants (1) subjected him to constant illumination that was so bright that it kept him from sleeping, causing him physical harm, without any legitimate penological interest and (2) awakened him on an hourly basis to make him move without any legitimate penological interest. Further, I find that plaintiff's allegation that defendants subjected him to 24-hour a day video monitoring fails to state a constitutional violation. Therefore, this claim will be dismissed. I will grant defendants' motion to dismiss as to plaintiff's claim involving constant monitoring and deny their motion as to his claim involving constant illumination and hourly awakenings.

1. Constant illumination

Although the precise contours of plaintiff's complaint are unclear, it is possible to construe the allegations in such a way that they establish a constitutional violation. Assuming that plaintiff is alleging that the constant illumination was so bright that it kept him from sleeping, causing him physical harm, and that there is no legitimate penological interest for the constant illumination at that level, the allegations establish a constitutional violation. On the other hand, if plaintiff is alleging merely that the cells have a light of low wattage on at all times in order to allow correctional staff to monitor inmates, this allegation would not rise to the level of an Eighth Amendment violation. Because the first and not the second interpretation of his allegations establishes a constitutional violation, I will assume that plaintiff is alleging that the constant illumination was so bright that it kept him from sleeping, causing him physical harm, and lacked any legitimate penological interest.

Research did not uncover any cases holding that plaintiff's allegations would establish a violation of the Eighth Amendment prohibition on cruel and unusual punishment. (Because I granted plaintiff's motion for the court

to waive his memorandum of law in opposition to defendants' immunity defense, plaintiff is not required to conduct research in response to defendants' defense.) The Court of Appeals for the Seventh Circuit has never ruled on the issue. See Whitford v. Boglino, 202 F.3d 276, 1999 WL 828598, at *3 (7th Cir. 1999) ("We have not decided whether keeping a cell lighted continuously may work an atypical deprivation or amount to cruel and unusual punishment under the Eighth Amendment."). Nevertheless, such conditions would "exceed[] contemporary bounds of decency of a mature, civilized society." Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir. 1994) (citing Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992)). A reasonable person would have known that his action of subjecting plaintiff to bright, constant lighting rises to the level of cruel and unusual punishment. Because plaintiffs allegations are so egregious that they violate clearly established Eighth Amendment case law, I conclude that defendants are not entitled to qualified immunity on plaintiff's claim that the constant illumination was so bright that it kept him from sleeping, causing him physical harm, without any legitimate penological interest.

2. Constant video monitoring

Plaintiff also alleges that defendants subjected him to constant video monitoring. In Johnson v. Phelan, 69 F.3d 144, 149 (7th Cir. 1995), the Court of Appeals for the Seventh Circuit upheld a prison practice that allowed female guards to visually monitor male prisoners' movements, including while the prisoners were naked. The court found that such a practice was not prohibited under the Fourth Amendment's right to privacy or under the Eighth Amendment's ban on cruel and unusual punishment as long as the practice is not undertaken for the purpose of humiliating inmates. Id. Nothing in plaintiff's complaint suggests that the 24-hour monitoring about which he complains was conducted for the purpose of harassing or humiliating inmates and not for legitimate penological interests. Therefore, I conclude that defendants would not have violated plaintiff's constitutional rights on the facts alleged. This claim will be dismissed.

Plaintiff cites two cases in support of the proposition that inmates have a right to privacy against constant monitoring. Neither of these cases persuades me that he has a claim. In Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993), the Court of Appeals for the Eleventh Circuit held that a prisoner may have a right to be free from cross-gender monitoring. However, in that case, the court held that any right to privacy can be curtailed when there is a legitimate penological interest in doing so. Id. In Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992), the Court of Appeals for the Ninth Circuit determined that it was a question of fact whether a male parole officer violated a female parolee's right to privacy by entering her bathroom stall. Neither case is binding on prisons in this circuit and neither case establishes that defendants violated plaintiff's right to be free from cruel and unusual punishment by monitoring him 24 hours a day by video.

3. Being awakened by guards during hourly bed checks

In his complaint, plaintiff alleges that defendants have a policy of awakening inmates on bed check rounds performed at least once an hour. He asserts that inmates are not allowed to place any items over their heads and that defendants have directed staff to "constantly awaken (SMCI inmates, plaintiff) at all times to make SMCI inmates, plaintiff move." Plt.'s Cpt., dkt. #1, at 2. If plaintiff is alleging that staff is directed to awaken inmates whose heads are covered, these allegations do not state a constitutional claim because such a policy furthers the legitimate

penological interest of prison security. However, plaintiff may be alleging that staff is directed to awaken inmates on an hourly basis regardless whether the inmates' heads are covered and for no legitimate penological interest. Assuming that plaintiff is making the second of these allegations, they establish a constitutional violation.

Turning to the second step of the inquiry, it must be determined whether there is any clearly established law holding that awakening inmates each hour during the night in order to make inmates move without any legitimate penological interest violates the Eighth Amendment prohibition on cruel and unusual punishment. The Court of Appeals for the Ninth Circuit has addressed prisoners complaining of sleep deprivation, but only in the context of harm resulting from constant illumination. Kennan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996;) (reversing grant of summary judgment on Eighth Amendment claim when inmate subjected to bright light 24-hours a day alleged he suffered grave sleeping problems and psychological harm). Despite the lack of case law addressing the precise facts of this case, it is clearly established that the conduct about which I understand plaintiff to complain "exceed[s] contemporary bounds of decency of a mature, civilized society." Lunsford, 17 F.3d at 1579 (citing Jackson, 955 F.2d at 22). A reasonable person would have known that the act of awakening plaintiff on an hourly basis to make him move without any legitimate penological reason rises to the level of cruel and unusual punishment. Accordingly, I conclude that defendants are not entitled to qualified immunity on plaintiff's claim that defendants awakened him on an hourly basis without any legitimate penological justification.

IV. DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO SIGN MEDICAL RELEASE FORMS

Defendants have filed a motion to dismiss plaintiff's claims relating to the conditions of confinement, only two of which remain at this point: constant illumination that was so bright that it kept him from sleeping, causing him physical harm, and lacking any legitimate penological interest; and being awakened on an hourly basis for no legitimate penological purpose. Defendants assert further that despite being asked on two occasions to sign an authorization for the release of his medical records, plaintiff has failed to do so. Defendants ask that this court dismiss plaintiff's Eighth Amendment conditions of confinement claims.

By filing this lawsuit in which he asserts that he has suffered physical and psychological harm as the result of the allegedly unconstitutional conditions of confinement, plaintiff has placed the state of his medical and psychological health at issue. Although this court will not order plaintiff to agree to the dissemination of his medical records, plaintiff may not have it both ways. He may not pursue a suit for damages for injuries to his health and withhold his health records from defendants. If plaintiff will not permit defendants' counsel to review his records for the purpose of defending this law suit, then he may not pursue this action against defendants. Plaintiff states that he has not signed the authorization because he believes that through its wording, defendants are trying to trick him into waiving his right to object to the content of the medical records. However, nothing in the standard language of the authorization form suggests that defendants are seeking to obtain plaintiff's medical records for any purpose other than to defend this law suit. Defendants' motion to dismiss will be stayed in order to allow plaintiff time to provide defendants' counsel with an authorization. Plaintiff may have until July 22, 2002, in which to provide defendants' counsel with an authorization for the release of his medical records for use in this case. If, by July 22, 2002, plaintiff has

failed to provide defendants' counsel with the authorization, defendants
may notify this court and I will grant defendants' motion to dismiss
plaintiff's remaining Eighth Amendment conditions of confinement claims.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Gerald Berge and
James Parisi relating to plaintiff's First Amendment claim is GRANTED;
plaintiff Allen Tony Davis's motion for summary judgment relating to his
First Amendment claim is DENIED;

2. Defendant Lofthouse's motion for summary judgment relating to
inadequate dental care is DENIED;

3. Plaintiff's motion for the court to order plaintiff to submit exhibit
A to his response to defendant Lofthouse's motion for summary judgment is
DENIED as unnecessary;

4. Plaintiff's motion to strike those portions of defendant Lofthouse's
affidavit relating to plaintiff's dental records that pre-date his current
claim is DENIED;

5. Plaintiff's motion objecting to a supplemental affidavit of Douglas
S. Knott filed in conjunction with defendant Lofthouse's reply to
plaintiff's response to the motion for summary judgment is DENIED as
unnecessary;

6. Defendants' motion to dismiss on the grounds of failure to exhaust
administrative remedies and qualified immunity filed by defendants is
GRANTED as to plaintiff's claims that defendants Berge, Boughton, Linda
Hoddy-Tripp, Randy Hepp, Vickie Sharpe and Tim Haines subjected him to
24-hour video monitoring; inadequate ventilation; inadequate recreation; no
outside view; inadequate clothing; visitation through video monitors; and
no hygiene products in cell; defendants' motion to dismiss is DENIED as to
plaintiff's claim that defendants Berge, Boughton, Hoddy-Tripp, Hepp, Sharpe
and Haines subjected him to (1) constant illumination that was so bright
that it kept him from sleeping, causing him physical harm, without any
legitimate penological interest and (2) being awakened on an hourly basis
without any legitimate penological justification;

7. Defendants' motion to dismiss on the ground that plaintiff has failed
to provide an authorization for the release of his medical records is
STAYED. Plaintiff may have until July 22, 2002, in which to provide
defendants' counsel with an authorization for the release of his medical
records for use in this case. If, by July 22, 2002, plaintiff has failed to
provide defendants' counsel with the authorization, defendants may notify
the court of this fact and I will grant defendants' motion to dismiss
plaintiff's remaining Eighth Amendment conditions of confinement claims;
and

8. Defendant Parisi is DISMISSED from this case.

Entered this 15th day of July, 2002.

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved

LOIS Federal District Court Opinions

SHOTS> v. <CSX> TRANSP., INC., (S.D.Ind. 1995)

*887 F. Supp. 204*

Jason M. <SHOTS>, Plaintiff, v. <CSX TRANSPORTATION, INC., Defendant.

No. TH 91-125-C R/H.

United States District Court, S.D. Indiana, Terre Haute Division.

February 10, 1995.

David V. Scott, New Albany, IN, Henry J. Price, Price & Barker, Indianapolis, IN, for Jason M. Shots.

Victor L. Frost, II, Frost & Hugon, Indianapolis, IN, for CSX Transp., Inc.

Peter J. Sacopulos, Sacopulos Johnson Carter & Sacopulos, Terre Haute, IN, for CNA Ins. Co.

### ORDER GRANTING DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

HUSSMANN, United States Magistrate Judge.

This matter is before the Court on the Defendant's Motion for Protective Order filed February 3, 1995. Plaintiff's Memorandum Pertaining to the Limited Scope of 23 U.S.C. § 409 was filed on February 6, 1995. The Court, being duly advised, now GRANTS the Motion for a Protective Order.

Defendant's Motion for a Protective Order is prompted by plaintiff's Notice of Deposition pertaining to Fed.R.Civ.P. 30 (b)(6) depositions of CSX employees. The notice describes the fact that plaintiff's counsel wishes to have documents produced relating to a federally funded project which resulted in the installation of automatic flashing red lights at the intersection where the accident in question took place. Defendant contends that this information is not subject to discovery pursuant to a statutory privilege created at 23 U.S.C. § 409.

23 U.S.C. § 409 is a straightforward federal exclusionary statute. It states:

Notwithstanding any provision of law, reports, surveys, schedules, lists or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be

implemented utilizing Federal-aid highway
funds shall not be subject to discovery or
admitted into evidence in a federal or state
court proceeding or considered for any
other purposes in any action for damages
arising from any occurrence at a location
mentioned in such report, surveys, lists, or
data.

The statute in its current form specifically prevents discovery
of documents prepared
West Page 205
for the purpose of identifying, evaluating or planning the
safety enhancement of railroad grade crossings. An earlier
version of the statute did not specifically use the word
"discovery," which led to a split of authority in court rulings
as to whether discovery would be permitted.[fn1] Due to this
confusion, Congress took action in late 1991 to make it clear
that the proscribed items were not discoverable. In *Harrison v.
Burlington Northern R. Co.,* 965 F.2d 155 (7th Cir. 1992), the
Seventh Circuit reviewed a trial court's rulings preventing the
admissibility of 23 U.S.C. § 409 documents that the plaintiff
sought to introduce. [The version of the statute reviewed by the
Seventh Circuit was the original 1987 version, and not the
late-1991 amended version.] In upholding the trial court's rulings,
the Seventh Circuit made it clear that 23 U.S.C. § 409 is
indeed very expansive in its application. It stated:

> We note that § 409 withdraws the broad
> latitude of discretion ordinarily allowed
> judges in evidentiary matters and bars the
> reception of evidence as it states that the
> "reports, surveys, schedules, lists, or data"
> within the statute "shall not be admitted
> into evidence in Federal or State court or
> considered for other purposes in any action
> for damages arising from any occurrence
> at a location mentioned or addressed in
> such reports, surveys, schedules, lists, or
> data." . . .

*Id.,* at 159.

The plaintiff in *Harrison* further argued on appeal that the
trial court erred in additionally excluding testimony from the
*authors* of the 23 U.S.C. § 409 documents. The Seventh Circuit
rejected this argument, adopting the holding of the trial court:

> 409 is, in effect, a congressional direction
> that if a project conceivably could be financed
> by federal funds as this one could
> have been, that in the interest of getting
> the job done, they don't want official
> reports being something that railroads have
> to be concerned about in personal injury
> cases, or that the investigator has to have
> that in mind when he is making a report. . . .
> If [the report is] not admissible,
> then having somebody get on the stand
> and testify to it, I don't think I can duck

the statute that way.

*Id.*, at 160.

The Seventh Circuit went on to adopt the following language from *Robertson v. Union Pac. R.R.*, 954 F.2d 1433, 1435 (8th Cir. 1992):

> Other courts have recognized that the underlying intent of the statute is to "facilitate candor in administrative evaluations of highway safety hazards," and to prohibit federally required record-keeping from being used as a "tool . . . in private litigation."

*Id.*, at 160.

Plaintiff argues here that the Court must require the defendant to demonstrate that the information it seeks to exclude from the trier of fact was compiled for the specific purposes enumerated in the statute. In addition, the plaintiff argues that the Court must strictly construe the statute and make sure that any documents for which protection is claimed are in the form of reports, surveys, schedules or lists of data compiled for the statutory purposes.

The defendant has submitted the materials at issue for *in camera* review, and asked for such inspection. The Court has done so. The materials begin with a March 2, 1987, letter from the Indiana Department of Highways engineer to the defendant relaying a request from the City of Vincennes for installation of signals at the subject crossing. That letter specifically provides that "[t]he project will be financed with the aid of Federal funds. . . ." The materials following this letter include correspondence, proposed plans and drawings, photographs and invoices relating to this project. It is undoubtedly unfortunate that the project was not completed until approximately February 1991, but the documents reflect steady progress toward the completion of the project. This Court's *in camera* review shows beyond any doubt that the sole and only purpose for these materials was to identify, evaluate and
West Page 206
plan a safety enhancement of a railway highway crossing and that the improvement was paid for by federal funds. All the materials in the file are clearly compiled with that end in mind and fit within the statutory criteria for protection. They are entitled to the privilege provided by statute and need not be produced. As the *Harrison* opinion concluded, defendant is also entitled to a Protective Order under which any witness' testimony about the contents of the file is also protected by the statutory privilege.

**SO ORDERED.**

[fn1] Although some courts did permit discovery, there never was any confusion as to whether the discovered documents would ultimately be admissible at trial. The courts were unanimous in holding that such documents were clearly inadmissible.
West Page 225

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved